We move to the last case today, case number nine, U.S. v. Griffin. Looks like everybody's here. May it please the court, we assert two procedural sentencing errors in this case. The first one is that the district court judge relied on speculation about the offense and Mr. Griffin's personal characteristics by stating that Mr. Griffin had to have been up to something other than simply possessing a firearm by virtue of having around $2,000 on his person at the time of his arrest. Suggested perhaps he was involved in drug dealing or theft or some kind of illegal gambling. Judge Cardone There was no objection? Mr. Griffin Correct. Judge Cardone And Mr. Griffin really didn't want to litigate the source of those funds? Mr. Griffin Well, the information in the pre-sentence report reflected that he was working cash jobs as an auto mechanic at the time. There's really no information in the record suggesting that he was involved in drug dealing. Certainly there was a prior arrest related to that many years earlier. Judge Cardone I thought he had prior convictions. Mr. Griffin He had two prior convictions. I think they were about five or six years earlier for drug distribution, possession with intent to distribute drugs. Judge Cardone Right. One of two things would have happened if there had been an objection. Either the judge would say, strike that last remark, I'm not considering it, or the judge would invite the parties to litigate the source of the funds. He really didn't want to do B, right? Mr. Griffin It's kind of difficult to disprove a negative, I guess. It's similar to the cases Bradley and Taylor that we talked about in our brief. Bradley was the case, was a sexual abuse of a child case, and the court speculated that because the defendant had managed to cover his crime that there must have been other victims. And similar here, Bradley didn't object to that, I guess, speculation. And the court, this court, the government on appeal argued that, look, they didn't object, it's forfeited. And this court said, no, it's not forfeited. I don't even really think that issue is fully addressed in the Bradley case. And it's not so much, I guess, a question of, did he object to it? This court has often said that, you know, once the judge says something, the horse is kind of out of the barn, and any objection is really actually an exception, and exceptions are not only not required, but actually disfavored by the court. I guess the import of my question goes to harm, because whether this is on plenary review or plain error review, a single comment like this in the course of a lengthy sentencing proceeding, a comment that at least comports with common sense, even though it's, you know, we don't have a factual finding that the source of the funds was illicit, is not going to be outcome determinative. It's not going to have any impact on the ultimate sentence. And Taylor, in response to that, Your Honor, and I understand that, you know, the inference itself isn't out, it's not an outrageous inference. The court's obviously permitted the inference when someone is possessing drugs that they might also be possessing guns. I don't know that the reverse inference is necessarily one that necessarily follows. But in Taylor, the court said that, and I guess the speculation in Taylor was that the defendant might have continued to, additional time was necessary because the defendant might have tried to harass judges if he was let out. And the court said there that the evaluation of the 3553A factors was flawed from the inception because this court's assessment of the very first factor, the nature and circumstances of the offense, and the history and characteristics of the defendant, rests on speculation rather than evidence bearing a sufficient indicia of reliability. So I guess on remand or resentencing, if the court says, look, that didn't affect the sentence, I didn't assume that fact or rely on that fact in imposing the sentence, we're probably okay. But we don't go through that exercise unless the single line of transcript can reasonably be assumed to have had an impact on the decision. And I don't see that conclusion flowing from this transcript, even if it was error. And the pre-sentence did say that he worked cash jobs, but it also said that his total monthly income was $2,000 a month, and here he's got $2,000 in his pocket on a single day. Those two things don't go together. Yeah. They're not entirely inconsistent, I would submit. But the due process inquiry or the due process line of cases, and I do think that this is a de novo review, it's not plain error. And under the de novo review, the court has said that it's a low bar and that reliance on misinformation occurs simply if the court gives explicit attention to that fact. And we submit that that's what's happened here. But that wasn't the only error at the sentencing. And the other procedural error that we submit occurred was the court's failure to address a principal argument in mitigation. And that was the fact that Mr. Griffin participated in a significant amount of programming in the state prison facility after he'd been arrested. And on that point, this court has long found that post-offense rehabilitative efforts are a significant, or at least a meritorious, sentencing argument for someone to make. It was a case that the government brought to the court's attention in its 28-J letter yesterday. And, you know, it wasn't really disputed here that Mr. Griffin completed a significant amount of programs. The court didn't address any of that at all. It didn't give a short shrift. It simply didn't address that. I know the government says that it doesn't really matter because the sentence was below guidelines. But this court's cases on the Cunningham line of cases have never said that the court gets around having to address arguments by imposing a below-guideline sentence. There certainly is, I guess, an understanding or maybe a reflection in a below-guideline sentence sometimes that the court, while it may not have specifically addressed an argument, it has considered it. But here the court, I think, gave some reasons for why it imposed a below-guideline sentence. As this judge often does, he indicated that its view that the guidelines didn't reflect the costs of incarceration. And he also opined that perhaps Mr. Griffin's criminal history was overstated. So there were some policy disagreements with the guidelines here that explained why the sentence was what it was. Here the inquiry is whether the district court considered these sentencing arguments. And it's impossible to take a look at the record in this case and walk away with the conclusion that it did. I understand the tendency to, on appeal, look at a below-guideline sentence in a really run-of-the-mill gun case and assume that there wasn't a sentencing error, certainly a, I guess, a meaningful sentencing error. But 42 months, it's not 42 years, but it's not insignificant. And the sentence, despite the fact that it was below the guidelines, could have been lower. It could have been along the lines of the type of sentence that the defense asked for. So for those reasons, Your Honor, I see him into my rebuttal time, but I'll reserve the rest of my time for it. Thank you, counsel. May it please the Court, Rebecca Tableson on behalf of the United States. Jibri Griffin was arrested when police responded to a 911 call indicating that one man was threatening another man with a gun in Milwaukee. Griffin, a felon, was found in possession of a loaded semi-automatic firearm with an extended magazine and nearly $2,000 in cash. For that conduct, he received a sentence of a little more than half the bottom of the guidelines range. It is undisputed that Griffin had, in the past, repeatedly been arrested with large sums of cash and drugs and that he was subject to a condition of probation prohibiting him from carrying large sums of cash on his person at the time he was arrested for this case with nearly $2,000. The requirement came out of what? A prior state case, Your Honor. Conviction? Yes, Your Honor. In these circumstances, the district court's observation that carrying a large sum of cash is consistent with criminal activity was reasonable. Mr. Griffin did not indicate that he had obtained that nearly $2,000 through working a cash job or through any particular means. As Judge Sykes noted, the PSR did document that Griffin was working cash jobs, but he estimated his overall monthly income as about $2,000. So that doesn't necessarily scream out that the $1,887 he was carrying on the day of his arrest came from a cash job. Because of that lack of objection or any dispute, this issue is subject to plain error review, which is the approach that this court followed in Miller and Majewski when evaluating a district court's remark at sentencing. Rule 51A, on which Mr. Griffin relies, does not say otherwise. That's the rule about taking exceptions. It says that, quote, exceptions to rulings or orders of the court are unnecessary, but we are not talking about a ruling or order here, rather a remark that the district court made in the course of explaining its sentence. The cases say the same. Mr. Griffin cites Bartlett to support his Rule 51A argument, but that case does not support it. What Bartlett says is, quote, the rules do not require a ruling after it has been made. In the reply brief, Mr. Griffin has simply inserted in brackets the words, or comment, after the phrase judicial choice in Bartlett. That is not, in fact, what Bartlett says. Instead, the next paragraph of Bartlett is actually much more applicable to this case. It says, quote, when the judge surprises counsel, which is what Mr. Griffin says happened here, it is far better to err and resolve the matter in the district court than to bypass available opportunities and save the issue for appeal. And that reasoning is why the court in Miller and Majewski, in very similar situations, applied plain error review to assess a district court's remark during sentencing when that remark had not been the source of any discussion or dispute during the hearing itself. And that principle applies with special force in cases such as this where the argument is that the judge relied on unreliable information because those claims are easier to suss out in the district court if they are raised there. The judge can clarify. The judge can backtrack and strike. The judge can invite litigation if it's really, truly an important factor to the court's sentencing rationale. And so all of the policies behind plain error review seem to have special force in this context. I agree, Your Honor. And as this court has been recently emphasizing in a separate line of cases about sentencing, the sentencing hearing is really the main event. If there's something that we need to talk about, we need to talk about it at sentencing in front of the court. And if that had happened here, we could have gone, we could have addressed this issue, explicitly discussed the source of the money, if Mr. Griffin had wanted to, et cetera. In any event, ultimately, the district court's observation was just common sense. It was tailored to Griffin's own history. There was no effect on Griffin's substantial rights because there is absolutely no indication that this one passing sentence during the hearing was a fraud. This case is not in any way similar to Bradley or Taylor, which counsel has invoked. In those cases, the sentencing judge made very speculative remarks, and based on those remarks, imposed sentences that were far in excess of the guidelines. And that is really quite different from what happened below. Mr. Griffin's second argument is that the district court insufficiently addressed his jail. First, to be clear, the district court did address this issue, albeit briefly, in a passage that seems to be ignored in Mr. Griffin's briefs. The district court acknowledged Griffin's new, quote, aspirations and goals, but the court indicated that they did not outweigh, quote, the record that's before this court. That argument was responsive to the rehabilitation point because in counsel's letter, sentencing letter to the court, counsel said essentially, Mr. Griffin has pursued all this in jail rehabilitation, and based on that, he has aspirations and goals for when he gets out of prison, he wants to work on cars, et cetera. And that is what the district court responded to, albeit briefly, but explicitly during the sentencing hearing. Those remarks were short, but they conveyed the district court's reasoning, and they were part of a longer sentencing hearing in which the district court thoroughly explained Mr. Griffin's below-guideline sentence. Numerous decisions from this court, most notably Pote's, Graham, and Davis, have found no error in very similar circumstances. The bottom line here is that the district court's reasoning needs to be sufficient for this court to understand why the district court imposed its sentence and needs to convey what the district court accomplished here with the thorough sentencing that led to a very low sentence. Ultimately, Your Honors, Mr. Griffin's sentencing procedures were fair. His sentence was low. If there are no further questions from the court, we would respectfully ask to affirm the judgment below. Thank you, Counsel. Mr. Uhler? Your Honors, I don't have anything to add. If the court has any additional questions, I'm happy to answer them. I don't believe so. Thank you very much. Thank you. Thanks to both counsel. The case is taken under advisement, and the court will stand in recess. Thank you. Thank you.